UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NICOLE M., | |
| Plaintiff, | NO. 1:17-CV-3175-TOR |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 15; 16. These matters were submitted for consideration without oral argument. The Court has reviewed the administrative record and the parties' completed briefing, and is fully informed. For the reasons discussed below, Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**, and Defendant's Motion for Summary Judgment (ECF No. 16) is **GRANTED**.

//

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the

record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that he or she was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R.

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the

claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above.

*Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). If the

analysis proceeds to step five, the burden shifts to the Commissioner to establish

that (1) the claimant is capable of performing other work; and (2) such work

"exists in significant numbers in the national economy." 20 C.F.R.

§ 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### ALJ FINDINGS

Plaintiff filed an application for Supplemental Security Income ("SSI")

benefits on September 4, 2013, alleging a disability onset date of September 30,

2006. Tr. 19. The claim was denied initially and upon reconsideration. *Id.*

Plaintiff requested a hearing before an ALJ, which was held on January 6, 2016.

*Id.* At her hearing, Plaintiff amended her alleged onset date of her disability to

September 4, 2013. *Id.* The ALJ rendered a decision denying Plaintiff SSI

benefits on April 6, 2016. Tr. 32.

At step one, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since September 4, 2013. Tr. 21. At step two, the ALJ

determined that Plaintiff had the following severe impairments: "asymptomatic

HIV, chronic liver disease and cirrhosis, disorders of the thyroid gland, attention

deficit hyperactivity disorder (ADHD), affective disorders, anxiety disorders, and

substance addiction disorders." *Id.* At step three, the ALJ found that Plaintiff

does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  Tr. 22.

The ALJ then concluded that Plaintiff had the RFC to perform light work except she can perform work in which concentrated exposure of fumes, odors, dusts, gases, poor ventilation, and/or hazards is not present.  Tr. 24.  Plaintiff can understand, remember, and carry out unskilled, routine, and repetitive work that can be learned by demonstration, and in which tasks to be performed are predetermined by the employer.  *Id.*  She can cope with occasional work setting change and occasional interaction with supervisors.  *Id.*  She can work in proximity to coworkers, but not in a team or cooperative effort.  *Id.*  She can perform work that does not require interaction with the general public as an essential element of the job, but occasional incidental contact with the general public is not precluded.  *Id.*  The ALJ noted that Plaintiff had no past relevant work.  Tr. 30.

At step five, the ALJ identified work Plaintiff can perform, such as small product assembler, inspector and hand packager, or housekeeping cleaner.  Tr. 31. On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act.  *Id.*

//

//

Plaintiff raises four issues for review:

1.  Whether the ALJ reversibly erred by improperly weighing the opinion evidence during the relevant period.

2.  Whether the ALJ reversibly erred by improperly weighing the opinion evidence prior to the relevant period.

3.  Whether the ALJ reversibly erred by failing to find Plaintiff had severe, medically-determinable spinal impairments.

4.  Whether the ALJ reversibly erred by failing to fully credit Plaintiff without specific, clear, and convincing reasons to do so.

ECF No. 15 at 2. The Court evaluates each contention in turn.

**DISCUSSION**

**1.  Weighing Evidence During Relevant Period**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more

weight than the opinion of a reviewing physician. *Id.* at 1202. In addition, the Commissioner's regulations give more weight to opinions supported by reasoned explanations than to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at 830-31). Regardless of the source, an ALJ need not accept a physician's opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (quotation and citation omitted).

"If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" *Orn v. Astrue*, 495 F.3d 625, 632 (quoting 20 C.F.R. § 404.1527(d)(2)). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical

evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

## A. Jody Robinson, M.D.

The ALJ considered a January 2016 mental assessment submitted by treating psychiatrist Dr. Robinson and signed by case manager Marc Shellenberger. Tr. 30, 1029-33 (Ex. 20F), 1142-46 (Ex. 22F). Dr. Robinson found that Plaintiff had marked restrictions in activities of daily living, social functioning, and maintaining concentration. Tr. 30, 1143-44. The ALJ emphasized that Dr. Robinson completed the form with Plaintiff and that the opinion provided was based on Plaintiff's subjective allegations. Tr. 30, 1145. Dr. Robinson had only treated Plaintiff for a few months and the ALJ found that her opinion was inconsistent with treatment notes indicating improvement in Plaintiff's anxiety. Tr. 30, 847 (Ex. 17F). The ALJ noted that Plaintiff was examined and described as pleasant and cooperative. Tr. 30, 847. Her attention, concentration, and memory were noted as intact. Tr. 30, 847.

First, Plaintiff asserts that the ALJ harmfully erred by giving less weight to Dr. Robinson because she had completed the form with Plaintiff's input. ECF Nos. 15 at 7; 17 at 4. Second, Plaintiff insists that the ALJ improperly gave Dr. Robinson less weight because she had "only" treated Plaintiff for a few months.

ECF Nos. 15 at 8; 17 at 4. Third, Plaintiff contends that the ALJ improperly found the opinion inconsistent with the treatment notes. ECF Nos. 15 at 8; 17 at 4-5. The Commissioner insists the ALJ properly considered that the opinion was based on Plaintiff's subjective allegations, Dr. Robinson had only treated Plaintiff for a few months, and the opinion was inconsistent with other treatment notes. ECF No. 16 at 4-7.

In regards to self-reporting, "[a] physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (citation omitted). Yet, this rule "does not apply in the same manner to opinions regarding mental illness." *Id.* The Ninth Circuit found that a psychiatrist's partial reliance on the plaintiff's self-reported symptoms was not a reason to reject his opinion. *Id.* Yet, self-reporting is still a consideration even though it may not solely justify rejection of a treating psychiatrist's opinion.

This Court determines that the ALJ properly found it persuasive that Dr. Robinson's opinion was based on Plaintiff's self-reporting. Tr. 1145. The Court notes that Dr. Robinson did not provide any other support for her opinion regarding Plaintiff's symptoms and thus this case is distinguishable from the partial reliance in *Buck*. *See Buck*, 869 F.3d at 1049. While self-reporting is a mere

consideration and does not solely justify rejection of a treating psychiatrist's

opinion, the Court finds that the ALJ did not err in considering this evidence in her

rejection of Dr. Robinson's opinion.

The ALJ did not only base her opinion on the Plaintiff's self-reporting, but

also that Dr. Robinson had only seen Plaintiff for a few months. Tr. 30. Plaintiff

concedes that the length and frequency of a treating relationship are valid

considerations in determining what weight an opinion is owed. ECF No. 15 at 8;

20 C.F.R. § 416.927(c)(2). The Court is not persuaded that Dr. Robinson and

Plaintiff's relationship of "several months" means that the ALJ should give Dr.

Robinson's opinion controlling weight. *See* ECF No. 15 at 8.

Lastly, the ALJ properly evaluated conflicting treatment notes showing

some improvement in Plaintiff's anxiety and her intact attention, concentration,

and memory. Tr. 30, 847. "[T]he more consistent a medical opinion is with the

record as a whole, the more weight we will give to that medical opinion." 20

C.F.R. § 416.927(c)(4). The ALJ then properly gave Dr. Robinson's medical

opinion less weight because the opinion conflicted with the record.

Accordingly, the Court finds that the ALJ did not err in giving the opinion of

Dr. Robinson less weight. While Dr. Robinson's opinion is controlling as a

treating physician, the ALJ analyzed substantial evidence contradicting the

opinion. The ALJ properly took under consideration Plaintiff's self-reporting and

the few months Dr. Robinson had been treating Plaintiff.  The ALJ also summarized and analyzed conflicting treatment notes.  The Court determines that Plaintiff fails to establish that the ALJ erred in giving less weight to Dr. Robinson's opinion.

**B. Thomas Genthe, Ph.D.**

The ALJ considered Dr. Genthe's psychological examination of Plaintiff on February 2, 2014.  Tr. 29-30, 661-68 (Ex. 11F).  The ALJ noted that Dr. Genthe opined the Plaintiff suffered from moderate to severe social and occupational functional limitations.  Tr. 29, 663-64.  Dr. Genthe also noted that Plaintiff had a fair ability to interact with co-workers, supervisors, and the general public.  Tr. 29, 664.  He found the Plaintiff was unlikely to function adequately in a work setting until she received treatment and noted that two months of treatment may likely be sufficient.  Tr. 29, 664.  The ALJ gave some weight to Dr. Genthe's opinion, "to the extent it indicates the claimant could function in the workplace after engaging in mental health treatment."  Tr. 30.  The ALJ found that this statement was consistent with recent treatment notes from December 2015, which indicated some improvement in the claimant's anxiety.  Tr. 30, 845.  Plaintiff reported seeing her children a week prior and getting along okay with her mother.  Tr. 30, 845.  The ALJ also noted that Plaintiff was described as pleasant and cooperative, and her attention, concentration, and memory were noted as intact.  Tr. 30, 847.

Plaintiff contends that the ALJ erred by only crediting Dr. Genthe's finding that she might eventually improve sufficiently to return to work. ECF No. 15 at 11. Plaintiff emphasizes that Dr. Genthe found the length of time Plaintiff will be impaired with available treatment was two months to indefinitely. ECF No. 15 at 12; Tr. 664. Plaintiff contends that the ALJ's reliance on this time length was unfounded given Plaintiff's treatment records. ECF No. 15 at 11-12. Plaintiff notes that the ALJ's cited improvements occurred over a year after Dr. Genthe's opinion. *Id.* at 12. Plaintiff asserts that visiting her children once has nothing to do with her ability to hold down a full-time job. *Id.* Plaintiff concludes that the Court should credit Dr. Genthe's opinion of disabling limitations as true and remand for benefits. *Id.*

The Commissioner insists that the ALJ accounted for Dr. Genthe's opinion by finding that Plaintiff's mental impairments were not disabling because treatable impairments are not disabling. ECF No. 16 at 6. The Commissioner contends that while Plaintiff interprets Dr. Genthe's opinion differently, the Court should still affirm the ALJ's findings because "two inconsistent conclusions from the evidence does not prevent [the Commissioner]'s finding from being supported by substantial evidence." *Id.* at 7 (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). The Commissioner emphasizes that Plaintiff cannot show the ALJ's

interpretation was irrational and thus the Court must uphold the denial of benefits. *Id.*

Plaintiff responds that Dr. Genthe's function report makes clear that she was incapable of full-time work or even of functioning adequately in a work setting, and that any other statements as to prognosis are merely "other medical evidence" and not part of the medical opinion itself. ECF No. 17 at 5-6.

The Court finds that Plaintiff's argument does not warrant a reversal or remand because it amounts to no more than a dispute about the ALJ's interpretation of the evidence, and "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The ALJ provided clear and convincing reasons for giving some weight to Dr. Genthe's opinion. The ALJ noted that Dr. Genthe found Plaintiff could function in the workplace after engaging in treatment. Tr. 30. The ALJ also considered Plaintiff's improvements. The ALJ did no err simply because Plaintiff disagrees with the ALJ's interpretation of Dr. Genthe's opinion. The Court then determines that the ALJ did not err in giving some weight to this opinion as she properly analyzed the medical opinion, record, and explained her reasoning.

//

//

**C. Katherine Cawley**

Plaintiff argues that the ALJ erred by ignoring an April 2014 function report by Plaintiff's mother, Katherine Cawley. ECF No. 15 at 13. Competent lay witness testimony "*cannot* be disregarded without comment." *Molina*, 674 F.3d at 1114 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). The ALJ must give reasons that are germane to each witness. *Id.* (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In *Molina*, the ALJ referenced the third party statements, but did not provide a reason for discounting the testimony. *Id.* at 1114-15. The court still determined that the failure to disregard without a comment was harmless error. "[A]n ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

Ms. Cawley submitted a function report where she did not know the answers to many of the questions, but concluded that Plaintiff could not handle a job because of her memory and short attention span. Tr. 296-303 (Ex. 15E). The ALJ similarly discredited Plaintiff's testimony by citing objective medical evidence that her attention, concentration, and memory were intact. Tr. 25-26, 30, 847. Accordingly, the Court finds that the ALJ's failure to address Ms. Cawley's opinion testimony was harmless error because the same evidence used to discredit

Plaintiff also discredits Ms. Cawley's opinion. Plaintiff's credibility will be discussed further below.

### 2. Weighing Evidence Prior to the Relevant Period

Plaintiff alleges that the ALJ erred by not considering the medical opinions discussed below, but concedes that "medical opinions that predate the alleged onset of disability are generally of limited relevance." ECF No. 15 at 14; *Carmickle v. Comm'r*, *Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).

### A. Neil Barg, M.D.

The ALJ did not discuss a September 2011 opinion from treating physician Dr. Barg. Tr. 941-42 (Ex. 18F). Dr. Barg treated Plaintiff since 2004 and he opined in 2011 that she could not lift and carry up to five pounds. ECF No. 15 at 14; Tr. 941. Dr. Barg also concluded that her work function was not impaired physically and she could stand or sit for eight hours in a work day. Tr. 941.

In interpreting the evidence and developing the medical record in a written determination, an ALJ is not required to "discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). Rather, an ALJ "must explain why 'significant probative evidence has been rejected.'" *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (citation omitted).

Here, Plaintiff argues that her five pound lifting limitation is consistent with sedentary or less exertional limitations, matching Dr. Stringer's assessment. ECF No. 15 at 14; Tr. 353 (Ex. 1F). Plaintiff concedes that medical opinions predating the onset of disability are generally of limited relevance, but argues that Dr. Barg and Dr. Stringer were the only treating doctors to provide physical function limitations. ECF No. 15 at 14. Plaintiff asserts that non-examining physician, Dr. Bernadez-Fu, made contradictory findings, and the ALJ thus needed well-supported, specific, and legitimate reasons to credit his opinion over Dr. Barg's opinion. *Id.*

The Commissioner contends that the ALJ did not reject the opinion of Dr. Barg because the ALJ considered Plaintiff's functional abilities only as they related to the period beginning in September 2013. ECF No. 16 at 8-9. The Commissioner concludes that because the ALJ did not reject the opinion, she was not required to discuss it. *Id.* at 9. Yet, Plaintiff responds that the Commissioner's argument is contradicted by the ALJ's consideration of other opinions prior to the relevant period. ECF No. 17 at 7.

The Court finds the evidence which the ALJ ignored was neither significant nor probative. The Court is not persuaded that the ALJ erred in failing to address the opinion of Dr. Barg. The opinion is of limited relevance when it occurred almost two years prior to the onset date. His opinion is also conflicting as he

concluded that Plaintiff could only carry five pounds, but he also found that her work function was not physically impaired. Tr. 941. Accordingly, the Court finds that the ALJ did not err as Dr. Barg's opinion was prior to the onset date and was not significant evidence.

**B. Penny Stringer, M.D.**

The ALJ addressed an October 2010 opinion from Dr. Stringer. Tr. 27, 350-56 (Ex. 1F). Dr. Stringer opined that Plaintiff had a sedentary work level. Tr. 353. The ALJ gave Dr. Stringer's opinion little weight because her physical examination of the Plaintiff was primarily unremarkable and indicated that everything was within normal limits. Tr. 27.

Plaintiff insists that the ALJ misstates the record because Dr. Stringer's report included abnormal findings of a rash, skin lesions, wheezing, and an enlarged liver. ECF No. 15 at 15; Tr. 352. Plaintiff notes that Dr. Stringer also reviewed other laboratory findings, which included an ovarian cyst. ECF No. 15 at 15; Tr. 352. The Commissioner responds that Dr. Stringer checked the "within normal limits" box next to every area of the examination. ECF No. 16 at 9; Tr. 352. The Commissioner argues that Plaintiff's normal presentation conflicted with Dr. Stringer's conclusion that her impairments significantly interfered with her ability to perform basic work-related activities, and the ALJ then reasonably weighed the opinion. ECF No. 16 at 9.

1    The Court agrees with the Commissioner that Dr. Stringer's opinion found

2    Plaintiff was within normal limits and thus the ALJ properly gave little weight to

3    Dr. Stringer's conclusion of a sedentary work level. The Court finds that while Dr.

4    Stringer's opinion may be susceptible to more than one rational interpretation, the

5    ALJ's conclusion must be upheld. *See Burch*, 400 F.3d at 679. The ALJ properly

6    found that Dr. Stringer's opinion deserved little weight because it conflicted with

7    her own findings that everything was within normal limits. Tr. 352.

8    **C. Aaron Burdge, Ph.D.**

9        The ALJ gave some weight to Dr. Burdge's February 2013 psychiatric

10   evaluation. Tr. 29; 642-47 (Ex. 9F). The ALJ considered that Dr. Burdge opined

11   Plaintiff would have no to mild difficulty with simple work-related decisions. Tr.

12   29, 644-45. Dr. Burdge found that Plaintiff would have moderate difficulty with

13   detailed instructions, new tasks, and working independently. Tr. 29, 644-45. He

14   indicated Plaintiff would have marked difficulty communicating effectively in a

15   workplace, maintaining a regular workweek schedule, and behaving appropriately

16   in the workplace. Tr. 29, 644-45. Dr. Burdge noted that Plaintiff's impairments

17   would still persist even if she was sober for 60 days, but he expected that her

18   impairments would only last six to nine months with a treatment plan. Tr. 29, 645.

19   The ALJ gave weight to Dr. Burdge's opinion regarding Plaintiff's ability to

20   perform simple tasks because it was consistent with other evidence in the record.

Tr. 29, 646-47. Yet, the ALJ found that Dr. Burdge's opinion regarding Plaintiff's social functioning was too restrictive based on more recent evidence, such as Plaintiff's ability to communicate with others at group counseling sessions regularly. Tr. 29, 851-53, 859-61, 865 (Ex. 17F).

Plaintiff concedes that Dr. Burdge's opinion is less relevant than the opinions provided by her treating team and the examining psychologist during the relevant period. ECF No. 15 at 16. Yet, Plaintiff argues that the ALJ erred by failing to fully credit Dr. Burdge's opinion without adequate reasons. *Id.* Plaintiff alleges that her group counseling sessions were for the purpose of therapeutic treatment and carried no workplace activity tasks. *Id.* at 17. Plaintiff notes that the group only consisted of four people in a quiet room and only lasted two hours at a time. *Id.* Plaintiff then concludes that there is no correlation to workplace conditions sufficient to contradict Dr. Burdge's opinion. *Id.*

The Commissioner asserts that while Dr. Burdge noted a number of moderate and marked limitations, he concluded that Plaintiff would be impaired for only six to nine months "with available treatment." ECF No. 16 at 9; Tr. 645. The Commissioner insists that the ALJ accounted for this opinion by finding that Plaintiff's impairments, though limiting, were not disabling, and thus there is no conflict for the Court to resolve. ECF No. 16 at 9-10; Tr. 32.

1    Plaintiff responds that the ALJ did not give the limited time period as a

2    reason in the disability determination and thus the Court may not look to this

3    reason to justify the ALJ's decision.  ECF No. 17 at 9.  Plaintiff also notes that the

4    evidence demonstrates her condition did not improve.  *Id.*

5    The Court finds that the ALJ properly weighed the opinion of Dr. Burdge.

6    The Court considers that Dr. Burdge's findings are less relevant as they occurred

7    prior to the onset date and the ALJ noted that more recent evidence contradicted

8    Dr. Burdge's opinion.  While group sessions may not be directly translatable to a

9    workplace environment, the ALJ properly considered it as evidence of Plaintiff's

10   ability to communicate with others.  Her ability to communicate at group sessions

11   contradicts prior evidence of Dr. Burdge's restrictive social functioning.  Contrary

12   to Plaintiff's argument, the ALJ did not determine that Plaintiff's ability to

13   communicate in group sessions meant she could clearly communicate in a

14   workplace setting, but merely that her social functioning is not as restrictive as Dr.

15   Burdge's opinion alleged.  Accordingly, the Court determines that the ALJ did no

16   err in giving less weight to Dr. Burdge's opinion regarding social functioning

17   because more recent evidence showed Plaintiff had less restrictive social

18   functioning.

19   //

20   //

### D. Tae-Im Moon, Ph.D.

The ALJ analyzed the psychiatric evaluation conducted by Dr. Moon on August 10, 2010. Tr. 28. The ALJ noted that Dr. Moon opined Plaintiff had no limitation in activities of daily living, mild limitations in social interactions, no limitations with concentration on simple instructions, and moderate difficulty with completing complex instructions. Tr. 28, 574 (Ex. 5F). The ALJ gave some weight to Dr. Moon's opinion because she is an acceptable medical source and her opinion was consistent with her examination of the Plaintiff. Tr. 28.

Plaintiff argues that a person who has significant limitations in tolerating a normal work setting is likely to miss more than the tolerated one day of work per month and is likely to be off-task more than the tolerated 10% of the workday. ECF No. 15 at 17. Plaintiff concedes that Dr. Moon's opinion is less relevant than Plaintiff's treating team and examining psychologist during the relevant period, but asserts that the ALJ erred by failing to provide any reason not to fully credit Dr. Moon's opinion. *Id.* at 17-18.

The Commissioner emphasizes that Plaintiff does not explain how the ALJ failed to fully account for Dr. Moon's opinion. ECF No. 16 at 10. The Commissioner contends that there is no support for Plaintiff's argument and Dr. Moon did not indicate that Plaintiff would be absent more than one day per month or be off-task more than 10% of the workday. *Id.* Plaintiff responds that it is

reasonable to find that a person who has significant limitations in tolerating a normal work setting is likely to miss more than one day of work per month and is likely to be off-task. ECF No. 17 at 9.

The Court is not persuaded by Plaintiff's argument and finds that the ALJ did not err in giving some weight to Dr. Moon's opinion. Dr. Moon did not make any findings regarding Plaintiff's ability to work a full month without taking more than one day off or being off-task more than 10% of the workday. While Plaintiff may interpret Dr. Moon's evaluation differently, the ALJ's conclusion must be upheld as it is a rationale interpretation of the opinion. *See Burch*, 400 F.3d at 679. The Court determines that the ALJ properly considered the opinion of Dr. Moon.

**E. Leslie Morey, Ph.D.**

The ALJ considered a personality assessment inventory ("PAI") conducted by Dr. Morey on February 5, 2013. Tr. 28-29. Dr. Morey noted that Plaintiff's test results suggested significant thinking and concentration problems. Tr. 28, 632 (Ex. 8F). She opined that Plaintiff was likely unreliable and irresponsible, and likely had little success in social and occupational realms. Tr. 28, 632. Dr. Morey stated that Plaintiff was withdrawn, introverted, and likely appeared to others as if she had little interest in socializing. Tr. 28, 635. The ALJ emphasized that Dr. Morey indicated the Plaintiff's test results were likely to contain considerable distortion and were unlikely to be an accurate reflection of the Plaintiff's objective

clinical status. Tr. 28. The ALJ gave some weight to Dr. Morey's opinion as it was "indicative of the weight to be accorded to the claimant's self-reports regarding severity of symptoms when weighed against other evidence in the record." Tr. 28-29.

Plaintiff asserts that the ALJ harmfully erred in relying on the PAI as indicative of the weight to be accorded to her self-reports. ECF No. 15 at 18. Plaintiff insists that although the PAI was ultimately not considered a valid assessment of her personality, such tests are of limited to no use outside the confines of the test. *Id.* Plaintiff notes that the test results could be a "cry for help." *Id.* Plaintiff argues that the rest of the record does not support reliance upon this test, as Dr. Burdge considered these results but did not affirmatively diagnose malingering and found Plaintiff had put forth adequate effort during the interview process. ECF No. 15 at 18; Tr. 643-44. Plaintiff emphasizes that other providers found her "open and honest," "relatively genuine," and cooperative. ECF No. 15 at 18-19; Tr. 861, 665, 809.

The Commissioner argues that the ALJ found Plaintiff's allegations about her impairments and limitations as not fully credible, which is consistent with Dr. Morey's opinion of possible malingering and deliberate distortion. ECF No. 16 at 10-11. The Commissioner notes that while Plaintiff provides a variety of reasons

as to why she would give less weight to Dr. Morey's opinion, the Court cannot reweigh evidence and substitute its own judgment. *Id.* at 11.

The Court finds that the ALJ properly weighed Dr. Morey's assessment. As discussed below, the ALJ found Plaintiff lacked credibility and the PAI supports this finding. The ALJ considered Dr. Morey's opinion that Plaintiff's test results contained distortion and potential malingering. Tr. 28-29, 639 (Ex. 8F). While Plaintiff may argue for a different interpretation of the evidence, this Court's role is to determine if the ALJ harmfully erred and not to provide a new interpretation of the evidence. The Court finds that the ALJ sufficiently analyzed the PAI and agreed with its findings. The ALJ then properly weighed this evidence of potential malingering and distortion in regards Plaintiff's credibility. The Court is not persuaded that the PAI is of limited to no use and declines to infer that Plaintiff's potential distortion is really a "cry for help." *See* ECF No. 15 at 18.

### 3. Spinal Impairment

Plaintiff insists that the ALJ erred in failing to conclude at step two that she has severe, medically-determinable spinal impairments. *Id.* at 19. Step-two of the evaluation process requires the ALJ to determine if the claimant has a severe medically determinable physical or mental impairment or a combination of impairments that is severe. 20 C.F.R. § 416.920(a)(4)(ii). "[A]n impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic

work activities," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted).  The ALJ must take into account "the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe."  *Id*.  Generally, "the step-two inquiry is a de minimis screening device to dispose of groundless claims."  *Id.*  As a result, the ALJ's failure to classify an impairment as severe is harmless if the ALJ proceeds with the evaluation process and considers both severe and non-severe impairments when formulating the RFC.

Here, the ALJ found Plaintiff had several severe and non-severe impairments, but did not consider Plaintiff's alleged spinal impairments.  Tr. 21-23.  On December 31, 2014, Plaintiff stated that six months ago she had a "fairly traumatic fall prior to incarceration where she was standing on top of three stacked milk crates that gave way and she fell landing with her back bowed over the crate."  Tr. 1055, 1084.  She reports having back problems ever since.  Tr. 1055.  On January 26, 2015, Plaintiff had moderate C4-C5 disc space narrowing with anterior and posterior endplate spurring, additional moderate C6-C7 disc space narrowing with small posterior endplate osteophytes, uncovertebral spurring noted on the frontal radiograph at C4-C5, and moderate L3-L4 disc space narrowing with endplate sclerosis and degenerative change.  Tr. 1085-86 (Ex. 21F).

On June 15, 2015, Plaintiff complained of low back pain, but the hip x-ray did not reveal any abnormality and Plaintiff was encouraged to continue exercising. Tr. 766. On July 20, 2015, a physical examination showed paraspinal lower back pain, but Plaintiff was able to easily bend over and touch the floor. Tr. 763. She was instructed to continue physical therapy and was taught exercises for stretching the iliotibial band. *Id.* An exam on November 3, 2015 showed mild disc space narrowing at the C4-C5 level, hypertrophic changes resulting in mild narrowing of the C3-C4, and C4-C5 neural foramina. Tr. 802.

Plaintiff contends that the ALJ's error is not harmless because hypothetical questions to the Vocational Expert (VE) must set out all limitations and restrictions. ECF No. 15 at 19-20. Plaintiff asserts that if a hypothetical does not reflect all limitations, the VE's testimony has no evidentiary value to support a finding that the Plaintiff can perform jobs in the national economy. *Id.* at 20. Plaintiff concludes that since the ALJ failed to consider Plaintiff's spinal impairments, the ALJ did not pose a hypothetical to the VE reflecting Plaintiff's actual limitations and so her findings that Plaintiff could adjust to other work was unfounded. *Id.*

The Commissioner responds that Plaintiff points to no evidence suggesting any limitations stemming from her spinal impairments, let along significant limitations. ECF No. 16 at 2. The Commissioner argues that the Court should

reject Plaintiff's invitation to find that the ALJ failed to account for her back problems "in some unspecified way."  ECF No. 16 at 3; *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009).

While an ALJ must consider all relevant evidence in the record to determine a claimant's RFC, an ALJ is not required to "discuss every piece of evidence." *Howard*, 341 F.3d at 1012.  Additionally, Plaintiff bears the burden of proof at step two.  *Bray*, 554 F.3d at 1222.  There is no evidence in the record suggesting that Plaintiff asserted she had a spinal impairment and she did not discuss the issue at the hearing.  Plaintiff made no showing that this alleged impairment lasted for at least a year, as required under 20 C.F.R. § 416.909.  Plaintiff also did not establish that she is limited due to her back pain.  There is no evidence that her spinal impairment impacts her ability to work.  To whatever extent her back pain may still be an issue, there is no evidence that her ability to work suffered as a result.  Plaintiff simply failed to carry her burden on this issue.  The Court concludes that any error committed by the ALJ at step two was "inconsequential to the ultimate nondisability determination."  *Molina*, 674 F.3d at 1115.

**4. Credibility of Plaintiff**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation and citation omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quotation and citation omitted). "The only time this standard does not apply is when there is affirmative evidence that the claimant is malingering." *Carmickle*, 533 F.3d at 1160.

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

In making such a determination, the ALJ may consider: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, Plaintiff argues that the ALJ harmfully failed to provide adequate reasons for giving her testimony less weight. ECF No. 15 at 20-21. Yet, the Commissioner contends that affirmative evidence of malingering obviates the need for any further analysis of Plaintiff's credibility. ECF No. 16 at 3. The Commissioner emphasizes a PAI report and a psychological/psychiatric evaluation, which found evidence of malingering and determined that Plaintiff was motivated to portray herself in a negative or pathological manner. ECF No. 16 at 3; Tr. 638, 643.

The ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with other evidence …." Tr. 25. The ALJ then analyzed the objective medical evidence in the record. *Id.* The ALJ considered the PAI from February 5, 2013, where the examination notes found that Plaintiff may not have answered the questions in a completely forthright manner due to inconsistent responses to items with highly

similar content.  Tr. 26, 631 (Ex. 8F).  The ALJ also emphasized a psychiatric

evaluation where Plaintiff "made a number of vague claims and could not provide

relevant support when she was prompted to elaborate."  Tr. 26; 643 (Ex. 9F).

The Court finds that even if this evidence of malingering is insufficient to

discredit Plaintiff's testimony, the ALJ gave specific, clear, and convincing reasons

for the rejection.  The ALJ considered Plaintiff's diagnosis of HIV and thyroid

goiter.  Tr. 25.  The ALJ analyzed the record in regards to numerous psychiatric

evaluations.  Tr. 25-27.  A 2010 evaluation showed Plaintiff was able to spell the

word "world" forward and backward, repeat five digits forward, and was oriented

with coherent speech.  Tr. 25, 574 (Ex. 5F).  A March 2011 evaluation described

her thought content as normal and logical.  She also had fair judgment and

concentration.  Tr. 25-26; 569.  Her memory and attention were noted as good.  Tr.

25-26, 569.  In a September 2011 evaluation and August 2012 evaluation, Plaintiff

reported she was anxious and uncomfortable around other people.  Tr. 26, 559,

571.

The ALJ considered the malingering reports from 2013, but also considered

that her depression and anxiety were noted as mild at this time.  Tr. 26, 643, 646-

47 (Ex. 9F).  She was able to repeat eight digits forward and four in reverse, spell

the word "world" forwards and backwards, and to follow a three-step instruction

but was described as easily distracted.  Tr. 26, 646-47.  In February 2014, she was

described as well-groomed with good hygiene, organized, cooperative, and friendly. Tr. 26, 665-66 (Ex. 11F). In July 2014, Plaintiff presented with no anxiety, high irritability, depression, pessimism, feelings of hopelessness, or insomnia. Tr. 26, 741 (Ex. 16F). She reported normal enjoyment of activities, but with some difficulty concentrating. Tr. 26, 741.

In September 2015, Plaintiff complained of irritability, trouble focusing, and poor sleep, but she was described as pleasant and cooperative. Tr. 26, 809 (Ex. 17F). Her memory, attention, and concentration were noted as intact. Tr. 26, 809. She was started on medication and attended group counseling consistently from November to December 2015. Tr. 27, 851-53, 859-61, 865. She noted improvement in her anxiety in December 2015. Tr. 27, 845. She reported seeing her children and getting along ok with her mother. Tr. 27, 845. Plaintiff was again described as pleasant and cooperative. Tr. 27, 847. Her memory was also still intact. Tr. 27, 847.

The ALJ then clearly considered Plaintiff's reputation for truthfulness in regards to her not answering questions in a completely forthright manner in 2013. Tr. 26. The ALJ considered the inconsistencies in her testimony and her conduct of reporting improvement in her anxiety and ability to visit her children and get along with her mother. Tr. 26-27. The ALJ also extensively analyzed opinions from physicians and third parties concerning the severity of Plaintiff's condition.

Tr. 27-30. Accordingly, the Court finds that even if the ALJ's consideration of malingering is insufficient, the ALJ still properly discredited Plaintiff's credibility with specific, clear, and convincing reasons.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 16) is **GRANTED**.

The District Court Executive is directed to enter this Order, enter **JUDGMENT** for Defendant, furnish copies to counsel, and **CLOSE** the file.

**DATED** June 25, 2018.



THOMAS O. RICE
Chief United States District Judge